[983 NYS2d 240]

Harvardsky Prumyslovy Holding, AS.-V Likvidaci, Appellant, v Viktor Kozeny, Defendant, and Landlocked Shipping Company, Respondent.

First Department, April 1, 2014

### APPEARANCES OF COUNSEL

*Milbank, Tweed, Hadley & McCloy LLP*, New York City (*Edward G. Baldwin, Michael D. Nolan* and *Sander Bak* of counsel), for appellant.

*Shoemaker Ghiselli + Schwartz LLC*, Boulder, CO (*Paul Schwartz* of the bar of the State of Colorado, admitted pro hac vice, of counsel), *Carter Ledyard & Milburn LLP*, New York City (*Judith A Lockhart* of counsel), and *James Nesland*, New York City, for respondent.

### OPINION OF THE COURT

Tom, J.

We are called upon to decide whether the courts of this state must recognize a foreign country judgment issued by a criminal court awarding a sum of money as compensation for damages sustained by the victim of a fraudulent scheme (*see* CPLR 5303). Defendant Landlocked Shipping Company argues, inter alia, that because the judgment was rendered by a Czech criminal court, it is not civil in nature and, thus, unenforceable as "a

fine or other penalty" (CPLR 5301 [b]). No support for this interpretation is to be found, either in the statutory language or case law, and the issue appears to be one of first impression.

This controversy has its origins in the privatization of formerly state-owned companies in the Czech Republic. In the early 1990s, Czech citizens were issued voucher points that could be used to purchase shares in designated firms or assigned to one of many investment privatization funds (IPFs) that would purchase and manage a portfolio of shares on their behalf. The judgment of the Municipal Court in Prague, rendered July 9, 2010, states that defendant Viktor Kozeny utilized Harvard Capital and Consulting to solicit investors through its six Harvard investment funds, one of which ultimately became plaintiff Harvardsky Prumyslovy Holding, AS.-V Likvidaci (Harvardsky). As the authorized representative of Harvard Capital, Kozeny then looted the IPFs, diverting the funds of many Czech investors to a series of shell companies in Cyprus. Kozeny, who had relocated to the Bahamas, was prosecuted in absentia after the Bahamian government refused extradition. He was found guilty of gross fraud and sentenced to a term of 10 years. Harvardsky, with approximately 250,000 shareholders, joined in the action as the injured party, and Kozeny was directed to pay compensation in the sum of CZK 8,289,933,074.05 (approximately USD $410 million) to the company as "compensation for damage to the victim" under section 228 (1) of the Czech Code of Criminal Procedure in accordance with the relief sought.

Harvardsky subsequently commenced this action under CPLR article 53 seeking recognition of the Czech judgment to render it enforceable in New York. Harvardsky also seeks the attachment of funds held in a Wells Fargo bank account in the name of Landlocked Shipping Company. The complaint alleges that Landlocked is a shell corporation organized under the laws of the Turks and Caicos Islands and is Kozeny's alter ego. In 1997, at Kozeny's direction and to prevent the seizure of assets by creditors, Landlocked acquired a house in Aspen, Colorado. Landlocked paid the purchase price of $19.75 million in cash and expended "millions of dollars" for renovation and furnishings, using funds that Kozeny had embezzled from plaintiff's shareholders, among others. Landlocked sold the house for $22 million in November 2001 and deposited the proceeds into its account at Wells Fargo Bank. It is asserted that Kozeny is the sole beneficial owner of the funds.

Landlocked subsequently moved to dismiss the complaint as asserted against it on grounds, inter alia, that New York courts may not recognize judgments that are penal in nature. Supreme Court granted Landlocked's motion to dismiss insofar as dismissing the complaint asserted against it, and otherwise denied the motion. It also vacated a temporary restraining order, and denied Harvardsky's motion to attach the bank funds.

This Court granted Harvardsky's motion for a stay pending the appeal to the extent of reinstating the temporary restraining order until the determination of this appeal (2013 NY Slip Op 79701[U] [2013]).

CPLR 5301 (b) defines a "foreign country judgment" as "any judgment of a foreign state granting or denying recovery of a sum of money, other than a judgment for taxes, a fine or other penalty, or a judgment for support in matrimonial or family matters." The judgment sought to be enforced in this case provides restitution to Harvardsky, directing Viktor Kozeny, the criminal defendant, to pay a specific sum as "compensation for damages to the victim" of his scheme to defraud. Clearly, the judgment is not one for taxes or support obligations; nor is it a fine. Thus, the question is whether a judgment providing compensation to a crime victim (here, a victim of criminal fraud) should be regarded as a "penalty" and denied enforcement.

■ Landlocked adopts the view that a judgment awarding damages for fraud, otherwise construed as compensatory when rendered by a civil court, must be regarded as an unenforceable penalty when issued by a criminal tribunal. The immediate problem with such a distinction is that there are any number of civil proceedings in which the compensation recoverable by the victim may constitute a penalty (*see e.g. State of N.Y. ex rel. Grupp v DHL Express [USA], Inc.*, 19 NY3d 278, 286-287 [2012] [fraud claims brought pursuant to the False Claims Act alleging violations of the State Finance Law]; *Mohassel v Fenwick*, 5 NY3d 44, 50 [2005] [rent overcharge in violation of Rent Stabilization Law]; *Cox v Microsoft Corp.*, 290 AD2d 206 [2002], *lv dismissed* 98 NY2d 728 [2002] [monopoly in violation of General Business Law § 340]). Moreover, the statutory basis for denying enforcement is predicated on the classification and purpose of the judgment, not the court that issued it, making no differentiation between foreign *civil* and foreign *criminal* judgments. Upon even a superficial examination, such a distinction is artificial.

Because the Civil Practice Law and Rules governs civil matters, it is appropriate to examine the question of whether a

monetary award constitutes a penalty by reference to a civil standard, that is, whether the award at issue has been held to impose a civil penalty rather than providing compensatory damages for the actual harm inflicted. As noted by the Supreme Court in *Huntington v Attrill* (146 US 657, 667 [1892]), the words "penal and penalty" are "commonly used as including any extraordinary liability to which the law subjects a wrongdoer in favor of the person wronged, not limited to the damages suffered." So, for example, in *State of N.Y. ex rel. Grupp* (19 NY3d at 286), the Court of Appeals stated that, "rather than redressing the harm actually suffered, the statute's imposition of civil penalties and treble damages evinces a broader punitive goal of deterring fraudulent conduct against the State." As this Court has noted, "[t]he idea that multiple damage awards are punitive finds support in the ancestry of numerous treble damages provisions having their origins in equivalent provisions of former criminal statutes" (*Cox v Microsoft Corp.*, 290 AD2d 206, 207 [1st Dept 2002], *lv dismissed* 98 NY2d 728 [2002]; *but see Mohassel*, 5 NY3d at 50 [treble damages awarded for a rent overcharge are designed "to compensate the tenant, particularly when the violation is willful"]). Indeed, this Court has applied this test in an action that likewise sought to recover monies obtained by fraud. We observed that even though the plaintiff was "a sovereign, its aim is merely the restoration of an outlay wrongfully obtained from it. The object of the action is not vindication of the public justice, but reparation to one aggrieved" (*Regierungspraesident Land Nordrhein-Westfalen v Rosenthal*, 17 AD2d 145, 148 [1st Dept 1962], *lv denied* 12 NY2d 648 [1963] [internal quotation marks omitted]). Where, as here, the purpose of a monetary judgment is to compensate the victim for actual damages, it represents "reparation to one aggrieved" (*id.* [internal quotation marks omitted]) regardless of whether or not a particular treble-damages award may be said to constitute a penalty. Section 228 (1) of the Czech Code of Criminal Procedure provides for victims of crimes to file a petition in a criminal proceeding for compensation of damages. Harvardsky's Czech counsel states that "the nature of such claim is civil and its qualification and calculation is done according to the civil law."

The purpose of CPLR article 53 (L 1970, ch 981, eff Sept. 1, 1970), adopting the Uniform Foreign Country Money-Judgments Recognition Act (CPLR 5309), is to promote reciprocal treatment for New York judgments in foreign courts by providing a

statutory basis to reflect New York's liberal treatment of foreign judgments (8th Ann Report of Jud Conf on CPLR, reprinted in 1970 McKinney's Session Laws of NY at 2784), which is generally acknowledged (*see Ackerman v Ackerman*, 517 F Supp 614, 624 [SD NY 1981], *affd* 676 F2d 898 [2d Cir 1982]). The salutary purpose of the statute is not promoted by the refusal to recognize a foreign judgment based on some contrived criterion, which may then prompt foreign courts to deny enforcement to similar New York judgments. Landlocked would distinguish between restitution awarded to a fraud victim in a criminal proceeding (Penal Law § 60.27 [1]) and restitution awarded in a proceeding initiated by the crime victim (*see City of New York v College Point Sports Assn., Inc.*, 61 AD3d 33 [2d Dept 2009]) or by the Office of Victim Services (Executive Law § 634 [1]; *see generally New York State Crime Victims Bd. v T.J.M. Prods.*, 265 AD2d 38 [1st Dept 2000]). The distinction is particularly tenuous in view of the collateral estoppel effect accorded to the criminal conviction in a separate civil restitution action (*see id.* at 44) and recognition of the necessity to offset any sum awarded by the criminal court to avoid duplicative recovery (*see id.* at 46).

Landlocked identifies no New York case denying enforcement of a judgment awarding restitution merely because it was rendered by a criminal court. The cases it cites are concerned with the extent of a court's power to award restitution (*People v Horne*, 97 NY2d 404 [2002]; *People v Fuller*, 57 NY2d 152 [1982]) and to designate a particular recipient (*People v Hall-Wilson*, 69 NY2d 154 [1987]). That a judgment of restitution may serve a penological purpose by offering "an effective rehabilitative penalty" and "a greater potential for deterrence" (*Hall-Wilson*, 69 NY2d at 157) does not detract from the court's power "to order offenders to compensate the victims of their crimes" for actual damages sustained (*Fuller*, 57 NY2d at 157). As noted in *Horne* (97 NY2d at 410), Penal Law § 60.27 (1) expressly limits the amount that may be awarded to "the actual out-of-pocket loss" incurred by the victim. The federal case cited is altogether consistent, holding that a judgment issued in a Belgian criminal proceeding for the precise amount of the victim's loss was "remedial" (*Chase Manhattan Bank, N.A. v Hoffman*, 665 F Supp 73, 76 [D Mass 1987]). The court went on to state that the award

> "afforded a private remedy rather than punished an offense against the public justice of Belgium. More-

over, the benefit of the judgment accrued in in its particulars to the private party plaintiff, not the state. Consequently . . . the judgment Chase now seeks to enforce is clearly not 'a fine or other penalty' " (id.).

■ There is no merit to Landlocked's position that this matter is governed by the doctrine of "reverse piercing" (where a plaintiff seeks to hold a company liable for the debts of its shareowner), rather than "traditional" piercing (where a plaintiff seeks to hold a shareowner liable for the debts of the company). Landlocked further contends that under New York's choice of law rules, veil-piercing claims are governed by the law of the company's state of incorporation, and that Harvardsky has failed to establish that reverse-piercing is a doctrine available under the law of the Turks and Caicos Islands. In so arguing, Landlocked again draws a distinction without a difference. Under either theory, "there is a disregard of the corporate form, and the controlling shareholders are treated as alter egos of the corporation and vice versa" (Sweeney, Cohn, Stahl & Vaccaro v Kane, 6 AD3d 72, 76 [2d Dept 2004]). Plaintiff has amassed sufficient evidence to demonstrate that Kozeny and Landlocked are alter egos of each other; thus, they may be treated as one and the same for the purpose of enforcing the judgment (see Motorola Credit Corp. v Uzan, 739 F Supp 2d 636, 638-640 [SD NY 2010]).

Accordingly, the order of the Supreme Court, New York County (Ellen M. Coin, J.), entered on or about June 10, 2013, which granted defendant Landlocked's motion to dismiss the complaint insofar as asserted against it, and denied plaintiff Harvardsky's motion for an order of attachment against Landlocked's bank account funds under CPLR article 62, should be reversed, on the law, without costs, the motion to dismiss the complaint denied, the complaint reinstated as against Landlocked, and the motion for attachment granted.

GONZALEZ, P.J., RENWICK, FREEDMAN and CLARK, JJ., concur.

Order, Supreme Court, New York County, entered on or about June 10, 2013, reversed, on the law, without costs, defendant Landlocked Shipping Company's motion to dismiss the complaint denied, the complaint reinstated as against Landlocked, and the motion for attachment granted.